USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHENZHEN YINGFAN E-COMMERCE CO., LTD.,

Petitioner,

-v-

AMAZON.COM SERVICES LLC and AMAZON.COM INC.,

Respondents.

26-cv-00023 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner Shenzhen Yingfan E-Commerce Co., Ltd. ("Petitioner") applies for an Order partially confirming and partially modifying a final arbitration award issued by the Honorable Lynne Bernabei on June 5, 2025. Dkt. No. 8. Respondents Amazon.com Services LLC ("Amazon LLC") and Amazon.com, Inc. ("Amazon Inc." and with Amazon LLC, "Amazon" or "Respondents") oppose the motion. Dkt. Nos. 13–14.

For the following reasons, the Motion to Partially Confirm and Partially Modify the Arbitration Award is denied.

## BACKGROUND

### I. The Relevant Parties and Underlying Dispute

Amazon LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington. Dkt. No. 1-1 ("Petition" or "Pet.") ¶ 2. Amazon Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. *Id.* Respondents own and operate Amazon.com, a large online retail store. *Id.* ¶ 7. Petitioner is a foreign corporation with its principal place of business in Shenzhen, China. *Id.* ¶ 1. It also is a third-party seller on Amazon.com. *Id.*

As a third-party seller on Amazon.com, Petitioner was required to sign Respondents' Business Solutions Agreement ("BSA"), which establishes terms and conditions for selling on the website. *Id.* ¶ 7. Several of those terms and conditions are relevant here. Section 2 of the BSA permits Amazon to withhold payments to vendors who use its services if it determines that a vendor's action violates its terms or policies or creates risks to Amazon or third parties for so long as the risks persist. Dkt. No. 10-1 § 2. It also permits Amazon to "permanently withhold any payments" if it determines that a vendor's account "has been used to engage in deceptive, fraudulent, or illegal activity . . . or to repeatedly violate [Amazon's] Program Policies." *Id.* Section 3 of the BSA provides that Amazon may terminate an account only with 30 days' advance notice, but it also permits Amazon to suspend or terminate a seller's account immediately if it determines that the seller's account was used for "deceptive or fraudulent, or illegal activity." *Id.* § 3. Section 8 of the BSA provides for the limitation of liability. *Id.* § 8. It provides in full:

> 8. Limitation of Liability
>
> We will not be liable (whether in contract, warranty, tort (including negligence, product liability, or other theory), or otherwise) to you or any other person for cost of cover, recovery, or recoupment of any investment made by you or your affiliates in connection with this agreement, or for any loss of profit, revenue, business, or data or punitive or consequential damages arising out of or relating to this agreement, even if Amazon has been advised of the possibility of those costs or damages. Further, our aggregate liability arising out of or in connection within this agreement or the transactions contemplated will not exceed at any time the total amounts during the prior six month period paid by you to Amazon in connection with the particular service giving rise to the claim.

*Id.* § 8 (capitalization altered).

The BSA also contains a binding arbitration provision. It provides that, with limited exceptions not applicable here, the parties consent that "any dispute with Amazon or its Affiliates or claim relating in any way to [the BSA] or your use of the Services will be resolved

by binding arbitration" before the American Arbitration Association under its commercial rules. *Id.* § 18.

Petitioner alleges that it built a vibrant and profitable retail business, generating $1,692,795.02 in total sales proceeds in the three months from August 29, 2021, to December 7, 2021. Pet. ¶ 12. However, according to Petitioner, in or around December 7, 2021, without prior notice and any substantiating evidence for alleged breaches, Amazon abruptly deactivated Petitioner's seller accounts on the basis that Petitioner had engaged in "review abuse." *Id.* ¶ 13. At the same time, Amazon also seized all of Petitioner's sales proceeds then held by it—a sum of $266,219.33. *Id.* ¶ 14.

## II. The Arbitration and Partial Final Award

On November 22, 2023, Petitioner filed a request for arbitration, seeking to recover its sales proceeds and other damages and declaratory relief. *Id.* ¶ 15; Dkt. No. 14-5. In its arbitration demand, Petitioner alleged that Amazon had abruptly deactivated its seller account following an "arbitrary" and "baseless" finding that Petitioner had committed "review abuse," and thereafter wrongly seized $266,219.33 in Petitioner's sales proceeds. Dkt. No. 14-5 ¶¶ 18, 25, 38. Petitioner asserted that Section 2 of the BSA was unenforceable, *id.* ¶ 29, and that Sections 2, 3, 8, and 18 of the BSA were oppressive terms that rendered the BSA a contract of adhesion, *id.* ¶ 9. Petitioner also brought claims for violation of Washington's Consumer Protection Act, breach of the BSA, unjust enrichment, and conversion. *Id.* ¶¶ 39–58. Amazon counterclaimed, seeking damages for Petitioner's violation of the BSA by engaging in "review abuse." Dkt. No. 14-3 at 4. Amazon also alleged that Petitioner violated the Washington Consumer Protection Act and tortiously interfered with Amazon's business relationships. *Id.*

After the parties engaged in discovery and submitted extensive briefing, the arbitrator issued a Partial Final Award on March 25, 2025. Pet. ¶ 16; Dkt. No. 10-2.

The arbitrator accepted as true Amazon's claim that Petitioner engaged in review abuse, a practice in which sellers solicit positive reviews for their products by offering customers incentives such as discounts, free products, reimbursements, or gift cards. Dkt. Nos. 10-2 at 8; 14-2 at 2. However, the arbitrator also concluded that Section 2 of the BSA was not enforceable because it was a penalty clause and not a liquidated damages provision, that Sections 2 and 3 of the BSA were substantively unconscionable and therefore unenforceable, and that Section 8 of the BSA violated the public policies of the State of Washington and therefore was unenforceable. Dkt. No. 10-2 at 12. The arbitrator further determined that Amazon had not violated the Washington Consumer Protection Act and was not liable to Petitioner on any tort claims and that Petitioner was not liable to Amazon on any of its counterclaims. *Id.* The arbitrator determined that she would award damages to Petitioner "on the basis of Amazon's withholding of its funds under Sections 2 and 3 of the BSA." *Id.*

The arbitrator concluded:

> After reviewing this Partial Final Award, the parties should confer to see if they can resolve the amount that Amazon owes to Shenzhen under this Partial Final Award. If the parties do not resolve this amount, they should confer among themselves as to available dates for a one-day hearing to determine damages. The hearing shall be scheduled for no later than May 8, 2025.

*Id*.

## III. The Proceedings with Respect to Damages

On April 30, 2025, the arbitrator issued an "Order Noticing Hearing on Damages." Dkt. No. 14-7. The order recounted that the parties and the arbitrator had held a prehearing conference that day and scheduled a hearing on damages for May 15, 2025 "in order to accommodate the schedules of counsel in China." *Id.* It directed that briefs setting forth the parties' respective positions with respect to damages were due on May 9, 2025. *Id.*

One week before the scheduled date for the hearing, on the evening of May 7, 2025,[1] Petitioner's counsel requested that, "[d]ue to a scheduling conflict with another hearing," the hearing be rescheduled to 10:00 a.m. EST on May 16 or May 19, 2025. Dkt. No. 14-8. The arbitrator responded that she was not available at either of the times proposed by Petitioner, directed the parties to confer about other dates from 5:00 to 8:00 p.m. EST on May 19 or May 20, 2025 during which a hearing could be held, invited the parties to consider submitting affidavits from their business officers attesting to damages in lieu of a live hearing, and directed the parties to respond as to a suitable date and time by no later than close of business on May 12, 2025. *Id.*

On May 9, 2025, the parties submitted their respective briefs on damages. Dkt. No. 14-11. Petitioner sought: (1) the return of the full $266,219.33 seized by Amazon at the time of account deactivation; (2) damages up to $408,754.34 or, in the alternative, $262,240.41, representing the direct and foreseeable losses from the account blocking; (3) prejudgment and post-judgment interest at the statutory rate of 12% per annum; and (4) attorneys' fees and arbitration costs. Dkt. No. 14-11.

Petitioner, however, did not meet the May 12 deadline to submit a suitable date or time for the damages hearing, nor did Amazon. On May 13, 2025, the arbitrator informed the parties that she was happy to rule on the basis of the filings "and if either or both parties want to have a hearing we could do it at 7:00 p.m. on May 19." Dkt. No. 14-8 at 7. Later that day, Petitioner's counsel informed the arbitrator that Petitioner was agreeable to a ruling "based solely on the filings." *Id.* at 6. Amazon responded on May 16 that its witness was available for a hearing on

[1] Times are those reflected in the emails.

May 20, 2025, at 7:00 p.m. EST. *Id.* at 5. That same day the arbitrator then scheduled the hearing for 7:00 p.m. EST on May 20. *Id.* at 4.

On May 19, 2026, the day before the hearing, Petitioner responded that it was unavailable for a hearing on May 20 and urged that the arbitrator not conduct a live hearing at all. Petitioner wrote:

> [Petitioner's] counsel is unavailable for the hearing scheduled on May 20 at 7:00 PM EST due to a scheduling conflict with another hearing. Additionally, we have not yet had an opportunity to confirm our witness's availability.
>
> Claimant respectfully reiterates its primary position that this arbitration should proceed based solely on the written submissions already provided by the parties. This approach aligns with the explicit terms of Section 18 of the Business Solutions Agreement (BSA), which grants the Seller the choice of arbitration method. Claimant chose the resolution based on written submissions.
>
> Should you, esteemed Arbitrator, have questions after reviewing the written materials, [Petitioner] is agreeable to an oral argument where counsel for both parties can attend and address those specific questions. This would be a more cost-effective and efficient manner to clarify any outstanding points.
>
> However, if an evidentiary hearing proceeds at Amazon's unilateral request, then Amazon should be ordered to pay all the additional costs, because this deviates from the BSA's provision allowing the Seller to choose written submissions, and the seller claimant suffered financial hardship due to Amazon's abrupt account blocking and seizure.

*Id.* at 3.

Petitioner wrote again on the morning of May 20 that it could not "attend the call today due to a scheduling conflict" and stating its availability for a final status call the following week. Dkt. No. 14-8 at 2. The arbitrator responded as follows:

> Due to the late notification of non-availability, we are having the hearing as scheduled. The respondent is not available other days this week, and I am not available next week. If you wish to make additional submissions prior to the hearing, I will be happy to review them.

*Id.* at 1–2.

Petitioner replied with the following message that same day:

> Thank you for your email. [Petitioner] promptly responded on May 19 to your May 16 email and advised that [Petitioner's] counsel is not available due to a scheduled conflict of another seller case's conference call (7-9pm EST May 20 for seller K v. Amazon). That hearing was confirmed around May 19 upon Amazon confirming they will pay for all the cost for the hearing related to another seller case. We immediately sent email [sic] to you and Amazon counsel re the schedule conflict issue. We understand you wish to move the case forward and we appreciate it. However, our law firm is a boutique one and only I can attend the hearing. I cannot make myself available for two hearings at the same time. Therefore, [Petitioner] respectfully request that the Arbitrator either schedule a call in May or June at all parties convenience (we understand you may not be available in next week, but [Petitioner] will make it available other weeks of May or June), alternatively, you can make final rulings based on parties' written submissions per the Written Submission Provision in the Arbitration Clause-Section 18 of Amazon's BSA.

*Id.* at 1.

That evening, the arbitrator sent a message to all parties indicating that the hearing on damages had been held and that she had considered the pleadings filed as well as the testimony presented by Amazon and inviting Petitioner to make additional submissions by midnight that day. Dkt. No. 14-10. Petitioner did not do so. Dkt. No. 15 at 10.

## IV. The Arbitrator's Judgement with Respect to Damages

As noted, Petitioner sought as damages the full amount of the $266,219.33 seized from Petitioner's account and $408,754.34 in consequential damages, or alternatively, $262,240.41 in consequential damages. Dkt. No. 14-11. Petitioner claimed that, pursuant to Section 8 of the BSA, it should receive consequential damages in the amount of the payments received by Petitioner from Amazon in the previous six-month period, which totaled $408,754.34. *Id.* at 5. Petitioner argued that, despite it being ruled unenforceable by the arbitrator, Section 8 provided a framework for damages calculation. *Id.* In the alternative, Petitioner argued that consequential damages should be measured pursuant to Section 3 of the BSA, which required Amazon to give Petitioner 30-days' notice prior to the suspension of its account. *Id.* Petitioner stated that a reasonable measure of 30 days' profit was Petitioner's monthly average net profit from the prior

six-month period, which amounted to $262,240.41. *Id.* Petitioner also sought pre-judgment and post-judgment interest at the Washington statutory rate of twelve percent per annum and attorneys' fees and arbitration costs. *Id.* at 1.

For its part, Amazon argued that Petitioner was entitled to the $199,805.64 in currently withheld funds, which represented the total $266,219.33 seized less fees and refunds, and $49,038.75 in consequential damages. Dkt. No. 14-9 at 2. Amazon argued that consequential damages should be calculated pursuant to Section 3 of the BSA but proposed a different methodology for calculating 30 days' profit. *Id.* Amazon proposed that the 30 days' profit be measured as Petitioner's monthly average net profit across its lifetime as a seller on Amazon.com, amounting to $49,038.75. *Id.* Amazon further argued that there was no basis in the BSA for an award of attorneys' fees and costs. *Id.*

On June 5, 2025, the arbitrator issued her Final Award, which granted Petitioner the return of $199,805.64 in withheld funds and $49,038.75 in consequential damages. Dkt. No. 14-9 at 2. The arbitrator rejected Petitioner's proposed damages figure and adopted in full the damages proposed by Amazon. *Id.* at 2.

The arbitrator determined that Petitioner was entitled to $199,805.64 in withheld funds since Amazon had been entitled to deduct refunds, storage fees, disposal fees, an ad fee, fees charged for resale items, and invoicing fees from the initial $266,219.33 that was in Petitioner's account when it was seized. *Id.* at 2. The arbitrator held that Amazon was entitled to these deductions under parts of the BSA which she had not ruled to be unenforceable—that is to say, Petitioner would have incurred these costs even if Amazon had not suspended its account. *Id.*

As to consequential damages, the arbitrator rejected Petitioner's interpretation of Section 8 of the BSA, holding that Section 8 provides a maximum amount due, rather than a proscribed

amount of damages for breach. *Id.* The arbitrator instead awarded consequential damages pursuant to Section 3 of the BSA, and adopted Amazon's methodology for calculating one month's profit. *Id.*

Finally, the arbitrator found that there was no basis in the BSA for the award of attorneys' fees or arbitration costs. *Id.* at 2–3. The arbitrator also concluded that since the arbitrator did not rule for Petitioner on its Washington Consumer Protection Act claim, there existed no statutory basis for fees or costs. *Id.* at 2. The arbitrator did not address Petitioner's request for pre- and post-judgment interest. *See id.* at 2–3.

On June 26, 2025, Petitioner filed a motion with the arbitrator to "modify arbitration award to correct computational error." Dkt. No. 10-15 at 1 (capitalization altered).[2] In the motion, Petitioner claimed it had been "denied its fundamental right to participate in the damages hearing" and was prevented from "presenting crucial evidence on damages and rebutting the opposing party's testimony," and requested a new damages hearing to "allow for a full and fair consideration of the evidence from both parties." *Id.* at 2–3. Petitioner challenged the award of $199,805.64 in withheld funds, arguing: (i) that since the seizure of its funds was unlawful, Amazon was not entitled to deduct any fees or refunds from the proceeds frozen in its account; (ii) that Amazon had inflated its storage and removal fees by unnecessarily delaying its removal of Petitioner's products from Amazon's inventory, (iii) that Amazon had already made deductions for customer refunds prior to seizing Petitioner's account, and therefore should not be allowed to make further deductions from the seized funds; (iv) that Amazon itself drove an increase in refunds by deactivating Petitioner's seller account, causing "customer panic" due to the perceived loss of customer support, warranty, and post-sale services, and (v) that arbitrators

[2] Citations to this docket entry use ECF pagination.

who had consistently found Section 2 of the BSA to be unenforceable had ordered Amazon to release the original withheld funds, without deductions. *Id.* at 3–7. Next, Petitioner reiterated its position that it was entitled to receive pre-judgment and post-judgment interest but did not seek modification of the award to include a grant of attorneys' fees or costs. *Id.* at 7–8. Finally, Petitioner claimed that the arbitrator made a "computational error by adopting Amazon's flawed methodology for calculating the damages amount," and once again urged the arbitrator to instead adopt the damages calculation that Petitioner had previously provided. *Id.* at 9–10.

On July 28, 2025, the arbitrator denied the motion to modify, reaffirming the existing measure of damages:

> First, I deny Claimant's Application with respect to correcting an alleged computational error. In fact, the Final Award explains that under the contract, Respondent Amazon is entitled to deduct charges for expenses incurred, such as "refunds to customers" and "disposal fees, an add fee, storage fee, fees charged for resale items and invoicing fees." . . .
>
> Second, I deny Claimant's Application with respect to awarding pre- and post-judgment interest. Here, the contract between Claimant and Respondent does not provide for attorney's fees or interest, and this arbitration is limited to what is provided for in the contract . . .
>
> Third, I deny Claimant's Application with respect to the scheduling of the arbitration. I scheduled the arbitration hearing three times. On April 30, 2025, I held a Prehearing Conference, and scheduled the hearing for May 15, 2025. This first time was scheduled for the convenience of Claimant's counsel, who was in China. On May 7, 2025, she subsequently said that time was not convenient, and she proposed May 16 or 19, 2025. I then re-scheduled the hearing for May 19, 2025,[3] but Claimant's counsel said she was not available. Therefore, I held the arbitration hearing on May 20, 2025, and allowed Claimant's counsel to file additional pleadings if she felt it necessary. She did not show up for the hearing on May 20, 2025 or file additional pleadings. Therefore, I closed the record and issued an award.

Dkt. No. 10-16.

---

[3] The arbitrator erred in stating that a hearing was scheduled for May 19, 2025. While the arbitrator suggested a hearing on May 19, no hearing was ever formally scheduled for that date. Dkt. No. 14-8 at 7.

## PROCEDURAL HISTORY

On October 29, 2025, Petitioner filed a Petition to Confirm and Modify Arbitration Award with the Supreme Court of the State of New York, County of New York. Dkt. No. 1-1. On January 2, 2026, Respondents timely filed a Notice of Removal to this Court. Dkt. No. 1.

On January 30, 2026, Petitioner filed this motion to partially confirm and partially vacate the Award. Dkt. No. 10. Petitioner also filed a memorandum of law in support of the motion. Dkt. No. 11. On February 27, 2026, Respondents filed a memorandum of law in opposition to the motion and the declaration of Lauren Dorsett in opposition, attaching exhibits. Dkt. Nos. 13–14. On March 13, 2026, Petitioner filed a reply memorandum of law in further support of the motion. Dkt. No. 15.

## DISCUSSION

Petitioner asks the Court to confirm the award in part and to vacate it in part. It asks the Court to confirm the award as to liability but to vacate or modify the award with respect to damages pursuant to Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11, for arbitral misconduct, manifest disregard for the law, and miscalculation. Dkt. No. 10 at 2. Respondents do not seek vacatur with respect to the award but argue that the Court should deny Petitioner's motion for confirmation for lack of standing. Respondents oppose the motion to vacate or modify the award with respect to damages. Dkt. No. 14 at 1. The Court will address each part of the motion in turn.

### I. Petition to Confirm the Arbitral Award

Petitioner seeks partial confirmation of the Award to the extent that it finds Sections 2, 3, and 8 of the BSA unenforceable. Dkt. No. 11 at 7. Respondents argue that Petitioner lacks the standing to seek confirmation because "[u]nder Second Circuit precedent, a party cannot establish a concrete injury when an arbitration award has been satisfied." Dkt. No. 14 at 21. It

contends that it has satisfied the Award by paying $248,844.39, the amount specified by the Final Award, to Petitioner. *Id.* at 22. On August 22, 2025, Petitioner acknowledged receiving Respondents' payment. Dkt. No. 14-13 at 1.

"Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.' For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Dep't of Commerce v. New York*, 588 U.S. 752, 766 (2019); *see also Frank v. Gaos*, 586 U.S. 485, 493 (2019). To have standing, a plaintiff must present an injury that is concrete, particularized and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "If a plaintiff fails to satisfy any of those elements, a federal court lacks subject-matter jurisdiction to hear the case and it must be dismissed." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017) (summary order). A party "must demonstrate standing for each claim that [it] press[es] and for each form of relief that [it] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Finally, "Article III's case-or-controversy requirement applies to actions governed by the FAA." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 68 (2d Cir. 2023); *Badgerow v. Walters*, 596 U.S. 1, 4 (2022).

Petitioner argues that it has standing to seek confirmation of the Award because it also seeks partial vacatur of the Award. Dkt. No. 15 at 17–18. But "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431; *accord Murthy v. Missouri*, 603 U.S. 43, 61 (2024). An order confirming an arbitration award is different than an order vacating it and provides different relief. An order confirming an award reduces a contractual right to a judgment. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). An order of vacatur prevents an award from being

enforced or confirmed. *See Berkowitz v. Gould Paper Corp.*, 2022 WL 118232, at *3 (S.D.N.Y. Jan. 12, 2022) (noting that "court must grant motion to confirm unless the award is vacated, modified, or corrected" under the FAA (quoting 9 U.S.C. § 9)). That Petitioner may have standing to seek vacatur thus does not demonstrate that it has standing to seek confirmation.

In *Stafford v. International Business Machines Corporation*, the Second Circuit held that a party lacks standing to seek confirmation of an award that has already been satisfied in full. 78 F.4th at 68. The Circuit concluded that a case ceases to be a "'Case' or 'Controversy' for purposes of Article III [] when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 67. "[N]o live controversy remains when a party has obtained all the relief she could receive on the claim through further litigation." *Id.* (quoting *Ruesch v. Comm'r of Internal Revenue*, 25 F.4th 67, 70 (2d Cir. 2022)).

*Stafford* is on all fours. It is not disputed that Respondents have satisfied the award. Thus, Petitioner has already obtained through Petitioner's compliance everything it would be entitled to obtain through a judgment. Petitioner lacks standing to bring suit seeking confirmation of the Award.

## II. Petition to Modify or Vacate the Award

Petitioner also asks the Court to vacate or modify the award with respect to damages. Dkt. No. 10 at 2. Petitioner argues that the arbitrator committed "misconduct" under Section 10(a) of the FAA by refusing to grant its request for a postponement of the May 20, 2025 hearing and by failing to consider "pertinent and material" evidence prior to reaching her judgment on damages. Dkt. No. 10 at 5. Petitioner also argues that the arbitrator manifestly disregarded the law when denying it pre-judgment and post-judgment interest, attorneys' fees, and arbitration costs. *Id.* Finally, Petitioner contends that the arbitrator committed an "evident material

miscalculation" in reaching her damages figure which serves as grounds for modification of the final arbitral award under Section 11 of the FAA. *Id.*

Section 10(a) of the FAA permits a court to vacate an arbitral award on limited grounds. The statute permits an award to be vacated only under one of four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; and
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them so that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The Second Circuit also has held that a "court may 'set aside an arbitration award if it was rendered in manifest disregard of the law.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011)). Under these standards, "vacatur of arbitral awards is extremely rare." *Salus Cap. Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 476 (S.D.N.Y. 2018) (quoting *Hamerslough v. Hipple*, 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012)). There is a "strong federal policy favoring arbitration, the enforcement of arbitration agreements and the confirmation of arbitration awards." *Pike v. Freeman*, 266 F.3d 78, 89 (2d Cir. 2001).

Section (11)(a) of the FAA permits the court to *modify* an award if "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).

"The statutory provisions [of the FAA], 9 U.S.C. §§ 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960); *see also Squarepoint Ops LLC v. Sesum*, 2020 WL 996760, at *3 (S.D.N.Y. Mar. 2, 2020) ("Even a 'serious error' in the law or facts is alone insufficient to warrant vacatur." (quoting *KT Corp. v. ABS Holdings, Ltd.*, 784 F. App'x 21, 24 (2d Cir. 2019) (summary order))). "[A] petition brought under the FAA is not an occasion for de novo review of an arbitral award," *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (internal quotation marks and citation omitted), nor an occasion for the court to conduct a "reassessment of the evidentiary record," *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

Petitioner in places frames its request as a motion to modify the Final Award. Dkt. No. 10 ¶ 1; Dkt. No. 10 at 10–11 ("Prayer for Relief"); Dkt. No. 11 at 5. At the same time, however, it also invokes Section 10 of the FAA and argues that there was misconduct in the arbitral hearing and that the award was made in manifest disregard of the law. Dkt. No. 10 ¶¶ 30–32; Dkt. No. 11 at 6, 11–23. Section 11 of the FAA addresses the modification or correction of an award and Section 11(a) permits an award to be modified only if there was "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).[4] Section 11 gives the court the authority "to modify and correct [an] award so as to effect its intent and promote justice between the

[4] Section 11(b) permits modification or correction where the arbitrator issues an award upon a matter not submitted to them and Section 11(c) permits modification or correction "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. §§ 11(b), (c). Neither provision is implicated here.

parties." *Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co.*, 184 F. Supp. 738, 741 (S.D.N.Y. 1960). By contrast, the remedy when there has been misconduct in a hearing or when an award is in manifest disregard of the law is an order of vacatur under Section 10 of the FAA. *See Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 612 (S.D.N.Y. 2024). On a motion to vacate, the court generally cannot resolve "the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40, n.10 (1987)). Accordingly, the Court analyzes Petitioner's arguments regarding misconduct and manifest disregard of the law through the lens of Section 10. It analyzes Petitioner's argument regarding miscalculation under Section 11.

### A. Section 10 Misconduct

Petitioner argues that the arbitrator committed misconduct under Section 10(a)(3) of the FAA by declining to postpone the May 20, 2025 hearing on damages, which in turn denied Petitioner the opportunity to: (1) present its own evidence and testimony regarding the proper calculation of damages, (2) cross-examine Respondents' witness, and (3) rebut Amazon's arguments and challenge the admissibility and accuracy of its evidence. Dkt. No. 11 at 11–13.

Section 10(a)(3) of the FAA permits the vacatur of an arbitral award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The Second Circuit has interpreted "section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (quoting *Bell Aerospace Co Div. of*

*Textron v. Loc. 516*, 500 F.2d 921, 923 (2d Cir. 1974)). "[A]n arbitrator 'must give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Id.* (quoting *Hoteles Condado Beach v. Union De Tronquistas Loc. 901,* 763 F.2d 34, 39 (1st Cir. 1985)). But the law gives an arbitration panel great discretion in terms of the form and the quantum of evidence it will receive. An arbitrator is not required to hold live hearings; she may choose to take submissions on paper. *See In re Arb. between Griffin Indus., Inc. & Petrojam, Ltd.*, 58 F. Supp. 2d 212, 219 (S.D.N.Y. 1999) ("While hearings are advisable in most arbitration proceedings, arbitrators are not compelled to conduct oral hearings in every case."); *see also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 448 (2d Cir. 1995) ("[O]ral argument is not a necessary component of due process in all circumstances." (quoting *Zaluski v. INS*, 37 F.3d 72, 73 (2d Cir. 1994))). She is also "not required to hear all the evidence proffered by a party." *Tempo Shain Corp.*, 120 F.3d at 20. "Arbitrators have substantial discretion to admit or exclude evidence." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013). "Every refusal to hear potentially relevant evidence does not create grounds for vacating an arbitration award." *Rai v. Barclays Cap. Inc.*, 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010), *aff'd*, 456 F. App'x 8 (2d Cir. 2011) (summary order). The Second Circuit has instructed that "procedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *Misco*, 484 U.S. at 40).

A party claiming arbitrator misconduct "has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103

F.3d 9, 12 (2d Cir. 1997)). Cases in which courts have vacated awards on the basis of Section 10(a)(3) misconduct are "rare" and often involve circumstances where "the party seeking vacatur was found to have been unfairly deprived of the opportunity to present crucial evidence." *Flextronics Int'l, Ltd. v. Allianz Glob. Corp. & Specialty SE*, 809 F. Supp. 3d 170, 189 (S.D.N.Y. 2025). For instance, in *Tempo Shain Corporation v. Bertek, Incorporated*, the Second Circuit vacated an arbitral award where the arbitration panel denied a party's request to keep the arbitration record open to allow it to present the crucial testimony of an executive who was the only witness who could testify in support of its claim for fraudulent inducement. 120 F.3d at 17–18. The party explained that the witness was temporarily unavailable due to his wife's diagnosis of cancer. *Id.* The panel denied the request on the ostensible basis that the witness's testimony was cumulative and unnecessary. *Id.* at 18. It then ruled for the other side on the basis of evidence that, because the witness was unavailable, was uncontested. The Second Circuit concluded that the "panel's refusal to continue the hearings to allow [the witness] to testify amount[ed] to fundamental unfairness and misconduct sufficient to vacate the arbitration award pursuant to section 10(a)(3) of the Act." *Id.* at 18, 21. The court did so, however, only after (1) reviewing an affidavit from the witness submitted to the district court stating what he would have testified to, if permitted; (2) comparing that testimony against the record before the arbitration panel; (3) determining that the evidence in the record did not address the matters to which the witness would have testified; and (4) concluding that, as a result, the arbitrator's decision left the party with no evidence to support its claims. *Id.* at 18, 20–21.

Judge Engelmayer has helpfully summarized the other cases in the Circuit where a court has vacated an award on the basis of Section 10(a)(3) misconduct:

> The other cases in this Circuit that held similarly have likewise involved the wrongful exclusion of unique and pivotal evidence. In *Attia v. Audionamix, Inc.*,

> the arbitrator wrongly, and without any legal basis, excluded an affidavit by a witness with unique testimony that would have been admissible under the Federal Rules of Evidence and "directly refuted" the other side's claims. 2015 WL 5580501, at *6–8 (S.D.N.Y. Sept. 21, 2015). In *Kaplan v. Alfred Dunhill of London, Inc.*, the arbitrator incorrectly held that he lacked jurisdiction to reopen an arbitral hearing, despite the absence of a party that had not received notice of the hearing. 1996 WL 640901, at *5–7 (S.D.N.Y. Nov. 4, 1996). And in *Vernon-Hunt v. Guzman*, the panel, having originally stated that certain exhibits "would be the exclusive evidence used to decide the award," did not review those exhibits due to its "administrative error" and reached its conclusions in express reliance on its mistaken belief that no exhibits had been submitted. 2021 WL 4950622, at *4 (S.D.N.Y. Oct. 25, 2021) [(Nathan, J.)] ("The Court emphasizes that its holding does not require that an arbitration panel expressly consider all evidence that a party submits to it. For example, had the arbitral panel decided to exclude Petitioner's proffered evidence, this Court would hesitate to vacate the award.").

*Flextronics Int'l*, 809 F. Supp. 3d at 189 (cleaned up). This Court would only add that in *Kaplan* the failure to give notice left one of the two parties to the arbitration undefended and unable to present the evidence that, if credited, would have undermined the award, 1996 WL 640901 at *5–6, and in *Guzman*, the effect of the arbitrator's error was to deprive the claimant of the right to have any evidence considered in support of his claim, 2021 WL 4950622, at *4. In sum, courts in this Circuit have held that under Section 10(a)(3) "vacatur is appropriate if the party's 'right to be heard has been grossly and totally blocked.'" *Vernon-Hunt*, 2021 WL 4950622, at *3 (quoting *Stifel, Nicolaus & Co. v. Forster*, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015)).

A party faces a similarly high hurdle when framing his complaint as being based on a refusal of the arbitrator to postpone a hearing in the face of sufficient cause shown. "In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a 'fundamentally unfair' proceeding." *Bisnoff v. King*, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001). Courts will affirm the arbitration award "as long as there is at least a barely colorable justification for the arbitrators' decision not to grant an adjournment." *Id.* (internal quotation marks and citation omitted).

Under that standard, arbitrators are given latitude in the management of the resolution of the dispute entrusted to them. *See, e.g., Ottawa Off. Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 220–21 (S.D.N.Y. 2001) (arbitrator had a "reasonable basis" to deny postponement where hearing had been adjourned twice, request was for an unspecified amount of time, petitioner's health reasons for postponement lacked credibility, and arbitrator stated willingness to accept post-hearing submissions and hold another day of live testimony); *Storey v. Searle Blatt Ltd.*, 685 F. Supp. 80, 82 (S.D.N.Y. 1988) (finding arbitrator had a "reasonable basis" to deny adjournment since proceedings had been open for over a year, two adjournments had already been granted, and a witness had already traveled to be present at the hearing); *Roche v. Loc. 32B-32J Serv. Emps. Int'l Union*, 755 F. Supp. 622, 624–25 (S.D.N.Y. 1991) (denying motion to vacate where arbitrator denied a party's fourth adjournment request after that party repeatedly appeared at hearings unprepared to present evidence); *Agrawal v. Agrawal*, 775 F. Supp. 588, 590–91 (E.D.N.Y. 1991), *aff'd*, 969 F.2d 1041 (2d Cir. 1992) (denying motion to vacate where arbitrator denied an adjournment to a party who had previously been granted an adjournment, promised not to seek further adjournments, and had the opportunity to present evidence an additional hearing at a later date). Among other things, an arbitrator is not required to make herself available at counsel's pleasure; a lawyer who takes on a representation for a client is expected to make himself available when the tribunal or a court wishes to hear the client's case. *See Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700, 703 (2d Cir. 2002) (summary order) (affirming a denial of vacatur when a hearing was scheduled for the "exact dates" petitioner's counsel had a trial in federal court because petitioner could have substituted counsel, sought alternative representation, or asked counsel to seek an adjournment in federal court); *All. Cap. Int'l Bank v. Wadiah Cap.*, 2025 WL 437618, at *4 (S.D.N.Y. Feb. 7, 2025)

(arbitrator had reasonable basis to deny postponement where counsel's request was based on vague prior commitments and counsel gave no indication as to why substitute representative could not participate).

In *Bisnoff*, for instance, the petitioner claimed that the arbitrator committed misconduct by refusing to postpone a hearing despite petitioner's showing that he suffered a medical condition that prevented him from traveling or participating in any questioning that would cause him stress. *Id.* at 634. As a result of the panel's decision, the hearing went forward without the presence of petitioner, "the sole living witness with any personal knowledge regarding many of the issues before the Panel," *id.* at 635, but the panel allowed petitioner to schedule and appear for a videotaped deposition which would be used as evidence and ordered him to be available by telephone to answer any questions the panel might have, *id.* at 634. The court rejected the motion to vacate. It held that the relevant considerations in determining whether to vacate an award based on the failure to grant an adjournment were "whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a 'fundamentally unfair' proceeding." *Id.* at 637. Put otherwise, "absent a reasonable basis for its decision, a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if it excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and making the hearing fundamentally unfair." *Id.* at 638. The petitioner could not complain of the award issued after a hearing held in his absence because: (1) the arbitrator offered a justification for the decision not to postpone that was "at least barely colorable" in that the arbitrator did not credit petitioner's medical claims, *id.* at 637–38, and (2) petitioner was given the opportunity to participate by telephone or videotaped deposition rendering the proceeding fundamentally fair. *Id.* at 639.

Petitioner has not shown that the arbitrator here engaged in misconduct—either through the unreasonable refusal to postpone the hearing or the failure to review pertinent evidence—sufficient to support vacatur of any portion of the award. The arbitrator had a reasonable basis for not further adjourning the hearing. The arbitrator had initially ordered that the hearing on damages would be scheduled for no later than May 8, 2025, Dkt. No. 10-2 at 12–13, but moved the hearing to May 15, 2025 to accommodate Petitioner's schedule, Dkt. No. 14-7. A week prior to the scheduled hearing, Petitioner's counsel wrote that she would be unavailable for the May 15 date. The arbitrator then suggested May 19 or May 20 as potential dates for a hearing, Dkt. No. 14-8 at 8, and Petitioner's counsel responded only with her preference for a ruling solely on the filings. *Id.* at 6. On May 16, the arbitrator set a hearing for May 20, 2025 but Petitioner did not notify the arbitrator of her unavailability until the day before the hearing. *Id.* at 3. The arbitrator denied the request due to late notice and noted that further adjournment would require postponing the hearing by approximately two weeks. *Id.* at 1. The arbitrator had a more than "colorable" basis for denying Petitioner's request for an adjournment. It was not unreasonable for the arbitrator, who had originally wanted to hold the hearing by May 8 and previously adjourned the hearing due to Petitioner's unavailability, to deny Petitioner's late request to postpone the hearing. *See Ainsworth v. Spartan Cap. Sec., LLC*, 2026 WL 472586, at *5 (S.D.N.Y. Feb. 19, 2026) (denying a motion to vacate since, *inter alia*, a request for postponement was made "the day before the hearing").

Moreover, there was nothing fundamentally unfair in the arbitrator's method of proceeding and Petitioner has demonstrated no prejudice. Petitioner repeatedly indicated and requested that the arbitrator make her decisions on the written submissions that were already made. Petitioner never requested the opportunity to present live testimony. And the arbitrator

offered Petitioner the opportunity to make additional submissions both prior to the hearing, Dkt. No. 14-8 at 1–2, and after the hearing, Dkt. No. 14-10. Petitioner eschewed both opportunities. Indeed, even today, Petitioner fails to identify any evidence or argument it would have presented had the arbitrator adjourned the hearing that it either did not or could not present before the arbitrator rendered her decision.

To be sure, the arbitrator's decision to proceed with the hearing even when Petitioner's counsel was not present resulted in Respondents being able to present live testimony and deprived Petitioner of the opportunity to cross-examine that testimony. But Petitioner's counsel had notice of the hearing; he simply chose not to attend.[5] *See N.Y.C. District Council of Carpenters v. JM Kelc Marine Contractors*, 2019 WL 3423274, at *3 (S.D.N.Y. July 30, 2019) (confirming award where one party failed to appear at arbitral hearing after due notice). And Petitioner has not shown any prejudice from the fact that Respondents were able to present evidence to support their case or by its inability to cross-examine. On its face, the Final Award was not based on witness testimony or any findings of credibility. It was based on the arbitrator's views of the BSA and of the law. Petitioner argued that compensatory damages should be based on a provision of the BSA that Petitioner successfully argued was unenforceable; Respondents argued that it should not be. Petitioner also argued in the alternative that compensatory damages should be based on the prior six months of returns; Respondents

---

[5] By analogy, a party complaining of a federal trial court's failure to adjourn a hearing "must establish both that the denial of the adjournment was arbitrary, and that it substantially impaired the presentation of his case." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998); *accord Lewis v. Rawson*, 564 F.3d 569, 577 (2d Cir. 2009). In federal court, "when a trial is scheduled to proceed and the defendant defaults by not appearing, a trial court is permitted to proceed with the trial in order to render a judgment." *In re W. 125th St. Liquors*, 615 B.R. 25, 30 (S.D.N.Y. 2020). In other words, it is not improper for a federal court to proceed with a trial in the absence of a party who was given notice. An arbitrator is held to no stricter standard.

argued for a lifetime figure. Petitioner's written damages filing directly addressed Respondents' brief on damages, meaning the evidence considered by the arbitrator contained Petitioner's rebuttal of Respondents' proposed damages calculation. *See* Dkt. No. 14-11, at 5 ("In Amazon's brief on damages dated in May 2025 . . ."). The arbitrator merely adopted the damages calculation already proposed by Respondents in their written filing, Dkt. No. 14-9, at 2, and addressed by Petitioner in their written filing. Dkt. No. 14-11. Petitioner has not demonstrated what it would have obtained from cross-examination that it was not able to present in its written submission. *Cf. Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 209 (S.D.N.Y. 2002) ("[I]t can hardly be the case that an arbitral award made on a written submission, where the parties had discretion to present the arbitrators with any information they thought relevant, including written sworn testimony if they wished, violates due process or denies fundamental fairness.").

At its core then, Petitioner seeks a windfall. Having stated repeatedly that it had no oral testimony to give and being unable to point to evidence offered in its absence that caused it prejudice and further having been given the opportunity (and foregoing it) to present additional evidence and offering no reason for an adjournment other than another client matter, it argues nonetheless that it was treated unfairly because it did not have that hearing. In short, it argues that the arbitrator and the Respondents should have rearranged suddenly their schedules to fit that of Petitioner's counsel. Petitioner may be unhappy with the award in its favor. But it cannot complain that the process was fundamentally unfair.

**B. Manifest Disregard of the Law**

Petitioner additionally claims that the arbitrator manifestly disregarded the law in two respects when rendering the arbitral award: first, the arbitrator incorrectly denied Petitioner pre-

judgment and post-judgment interest, and second, the arbitrator denied the Petitioner attorneys' fees and costs.

Review of an arbitration award for manifest disregard of law is "severely limited." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002) (Sotomayor, J.) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir. 1989)). To vacate an arbitral award on grounds of manifest disregard, the court "must find 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Id*. (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967)). Vacatur under the manifest disregard standard is limited to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)). "A court may vacate an arbitral award based on manifest disregard only upon a finding that '(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Precision Castparts Corp. v. Schultz Holding GmbH & Co. KG*, 2020 WL 4003578, at *2 (S.D.N.Y. July 15, 2020) (quoting *Zurich Am. Ins. Co.*, 811 F.3d at 589). "The test has sometimes been described in three parts, as requiring a demonstration that (1) 'the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators'; (2) 'the law was in fact improperly applied, leading to an erroneous outcome;' and (3) 'the arbitrator must have known of [the law's] existence, and its applicability to the problem before him.'" *Id.* (quoting *T.Co Metals*, 592 F.3d at 339); *see also LiveWire Ergogenics, Inc. v. JS Barkats PLLC*, 645 F. Supp. 3d 290, 298–99 (S.D.N.Y. 2022). "A federal court cannot vacate an arbitral award merely because it is

convinced that the arbitration panel made the wrong call on the law." *Wallace*, 378 F.3d at 190. "A party who agrees for an arbitrator to determine its disputes does not contract for those disputes to be determined in accordance with law, but only not in manifest disregard of the law." *Eletson*, 731 F. Supp. 3d at 614.

"A party seeking vacatur bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Moreover, in the absence of "an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator," the only duty of the arbitrator is to be aware of the "governing law identified by the parties to the arbitration." *Id.* Thus, the parties must have made the arbitrator aware not only of the law's existence, but also of "its applicability to the problem before him." *Precision Castparts Corp.*, 2020 WL 4003578, at *2 (quoting *T.Co Metals*, 592 F.3d at 339); *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002); *Aksman v. Greenwich Quantitative Rsch. LP*, 563 F. Supp. 3d 139, 150 (S.D.N.Y. 2021), *aff'd*, 2023 WL 6799770 (2d Cir. Oct. 16, 2023) (summary order).

**1. Pre-Award and Post-Award Interest**

Petitioner argues that the arbitrator's decision to not grant it pre-judgment and post-judgment interest constitutes a manifest disregard of the Washington state law, which governs the BSA. Dkt. No. 11 at 18–19. Petitioner contends, first, that it is a "well-defined, clearly applicable legal principle" of Washington state law that Petitioner was entitled to pre-judgment and post-judgment interest for a claim of liquidated damages, and second, that Petitioner put the arbitrator on notice of this requirement by "explicitly argu[ing] for pre- and post-judgment interest in its arbitration brief." *Id.* at 19.

As a threshold matter, Petitioner refers to pre- and post-*judgment* interest, but seeks modification of the award to include pre- and post-*award* interest. This distinction matters. An arbitrator does not enter judgment; she issues a final award. An unconfirmed arbitral award "is a contract right that may be used as the basis for a cause of action." *Florasynth,* 750 F.2d at 176; *accord Stafford*, 78 F.4th at 67–68. The "award itself is inchoate until enforced by judgment." *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975). In contrast, a judgment affords remedies for enforcement, including "placing the weight of a court's contempt power behind the award." *Stafford*, 78 F.4th at 68 (internal quotation marks and citation omitted). Courts frequently award pre- and post-judgment interest when confirming an arbitration award, *see e.g., Hotel & Gaming Trades Council, AFL-CIO v. Key Hotels, LLC*, 2025 WL 3142060, at *4 (S.D.N.Y. Nov. 10, 2025) (citing cases), but such determination from a district court when confirming an arbitral award is distinct from an arbitrator's decision as to whether to include pre- and/or post-award interest in the final arbitral award. *See KPMG, LLP v. Tongxin Int'l, Ltd.*, 2014 WL 13113821, at *3 (S.D.N.Y. Jan. 2, 2014) (noting distinction between pre-award, prejudgment interest, which falls within the discretion of arbitrators, and post-award, prejudgment interest, which the federal court has discretion to award on a motion to confirm the award); *Norwest Corp. v. Vulcan Cap. Mgmt., Inc.*, 2008 WL 11516935, at *1 (S.D.N.Y. Oct. 7, 2008) (noting that where an arbitrator decides, on the merits, not to award interest, courts are loathe to disturb the ruling of an arbitrator). That decision rests within the sound discretion of the arbitrator. *See* Wash. Rev. Code § 7.04A.210 ("[A]n arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding.").

Petitioner relies on Washington law which provides that "a party is entitled to *prejudgment* interest where the amount due is 'liquidated' and define[s] a 'liquidated' claim as one where the evidence furnishes data, which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion.'" *Weyerhauser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 132 (Wash. 2000) (emphasis supplied); *accord Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*, 250 P.3d 121, 128 (Wash. Ct. App. 2011). But Washington law explicitly affords arbitrators discretion in determining the appropriate remedies in an arbitral award. *See* Wash. Rev. Code § 7.04A.210. And, as the arbitrator noted when denying Petitioner's request for interest, the BSA does not provide for interest on an arbitral award. Dkt. No. 10-16 at 1; *see also* Dkt. No. 14-9 at 1 (arbitrator noting that "this arbitration is limited to what is provided for in the contract."). Petitioner did not provide any case law to the arbitrator—and does not present any to this Court—establishing that a private arbitrator appointed pursuant to the agreement of the parties was required to follow in determining an award the Washington statutory scheme applicable to judges in entering a judgment. The arbitrator thus did not act in manifest disregard of the law in failing to award interest.[6]

**2. Costs and Fees**

Petitioner also argues that the arbitrator's decision to deny it fees and costs constitutes a manifest disregard of law.

[6] Petitioner points to several other cases of arbitrations against Respondents in which pre-award and post-award interest were granted. However, awards in arbitration proceedings are not precedential and binding on future decisions. *Connecticut Light & Power Co. v. Loc. 420, Int'l Bhd. of Elec. Workers, AFL-CIO*, 718 F.2d 14, 20 (2d Cir. 1983) ("Courts reviewing inconsistent arbitration awards have generally concluded that arbitrators are not bound by the rationale of earlier decisions and that inconsistency with another award is not enough by itself to justify vacating an award . . . [p]rinciples of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings.").

Here, again, Petitioner's reliance on Washington state law is misplaced.[7] The relevant law in determining Petitioner's entitlement to fees and costs is the law applicable to remedies in arbitration under Washington law. Washington law provides that "[a]n arbitrator may award attorneys' fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by agreement of the parties to the arbitration proceeding." Wash. Rev. Code § 7.04A.210(2). It further provides that "[a]n arbitrator's expenses and fees, together with other expenses, must be paid as provided in the award." *Id.* § 7.04A.210(4). Washington law thus grants the arbitrator discretion in whether to award attorneys' fees and other reasonable expenses and the arbitrator's decision within that discretion is afforded weight under the law.

Here, the BSA provides that Amazon will pay for fees in claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous; otherwise, the BSA provides that payment of filing, administration, and arbitrator fees is governed by the American Arbitration Association's commercial rules. Dkt. No. 14-1 § 18. Those commercial rules in turn grant the arbitrator discretion in awarding fees, expenses, compensation, and attorneys' fees. *See* Am. Arb. Ass'n, Com. Arb. Rules & Mediation Proc., Rule R-49(c) (providing arbitrator with discretion to apportion fees, expenses, and compensation as the arbitrator deems appropriate); *id.* Rule R-49(c) ("The award of the arbitrator *may* include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration

[7] Petitioner cites a single case, *Berryman v. Metcalf*, which states: "The general rule in Washington . . . is that each party in a civil action will pay its own attorney fees and costs . . . [b]ut trial courts may award attorney fees when authorized 'by contract, statute, or a recognized ground in equity.'" 312 P.3d 745, 753 (Wash. Ct. App. 2013). As with the Washington statute governing arbitral awards, the language is permissive and Petitioner has provided no support for the proposition that an award of costs is required by law or that, even if required in a civil action, such an award is required in arbitration.

agreement" (emphasis added)). Petitioner has pointed to no support for the proposition that, despite the discretion afforded to the arbitrator under Washington law and the BSA, the arbitrator was required to award costs and fees.[8] In declining to award costs and fees, the arbitrator therefore did not act in manifest disregard of the law. *See N.Y. & Presbyterian Hosp. v. N.Y. State Nurses Ass'n*, 2025 WL 2793686, at *7 (S.D.N.Y. Sept. 30, 2025) ("[A]rbitrators are given a wide berth when crafting a suitable remedy absent a limiting contractual provision that narrows their authority.").

**C. Section 11 Miscalculation**

Section 11(a) of the FAA states that courts may modify an arbitration award "where there was an evident material miscalculation of figures." 9 U.S.C. § 11(a). However, while the district court has the power to modify under Section 11(a), "[m]odification based on evident material miscalculation is generally limited to patently obvious mistakes on the face of the award, such as where the award would provide for double recovery." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011). Section 11(a) does not permit the modification of an award that is "not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lays at the heart of the arbitration." *Id.* (*quoting Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25, 2000).

Petitioner argues that the arbitrator committed an evident material miscalculation by: (1) permitting Respondents to deduct refunds and fees from the $266,219.33 that it seized, (2) not

[8] Petitioner again points to previous arbitral awards in which arbitrators had awarded fees and costs to parties similarly situated to Petitioner. Dkt. No.14, Ex. 11, at 6. As previously discussed, though, arbitral decisions are not binding, and conformity with previous cases is not a requirement imposed on arbitrators. *See Conn. Light*, 718 F.2d 14 at 20.

awarding pre-judgement interest, post-judgement interest, costs, and fees, and (3) incorrectly calculating consequential damages. Dkt. No. 13 at 11–25. At their core, these are substantive claims that the arbitrator erred in her interpretation of the BSA, not a claim of mathematical mistake. *See Bey v. Rochdale Vill., Inc.*, 2024 WL 4212008, at *5 (E.D.N.Y. Sept. 16, 2024) ("A court may not modify an arbitration award 'simply because it believes the arbitrator incorrectly interpreted a contract.'" (quoting *Foster Wheeler Env't Corp. v. EnergX TN, LLC*, 2014 WL 982857, at *5–6 (S.D.N.Y. Mar. 13, 2014))). As addressed above, the arbitrator committed no error or miscalculation in declining to award interest, costs, and fees.

As to the calculation of deductions, Petitioner argues the arbitral award has "no factual basis in the record" and that the arbitrator provided "no methodology or explanation" for how she arrived at her damages calculation, which Petitioner characterizes as proof that the arbitrator merely "rubberstamped" the numbers provided by Respondents. Dkt. No. 10 at 15. In making this argument, however, Petitioner ignores the section of the arbitrator's Final Award titled "FINDINGS AND ANALYSIS," Dkt. No. 14-9, at 2, in which the arbitrator explained how she arrived at her calculation of damages. In that section, the arbitrator stated Respondents owed Petitioner: (1) $199,805.64 in withheld funds, determined by deducting $66,413.69, the amount in refunds and fees that Respondent was entitled to remove from Petitioner's account, from $266,219.33, the amount in Petitioner's account when it was seized by Respondents, (2) $54,226.25 in consequential damages, measured in Petitioner's monthly average net profit across its lifetime as a seller on Amazon.com, and (3) no attorneys' fees or costs since the BSA did not provide for them. *Id.* at 2–3. The arbitrator did not directly address Petitioner's claim for pre-judgment and post-judgement interest in the Final Award but later confirmed that interest would not be granted since the BSA did not provide for interest. Dkt. No. 10-16, at 2.

Petitioner additionally argues that the arbitrator's consideration of deductions was "improper" and "should have been rejected." Dkt. No. 10 at 16. This argument, however, "is really an objection to how the [a]rbitrator weighed the evidence, which does not amount to refusing to hear evidence pertinent and material to the controversy." *Malato v. DigitalOcean LLC*, 2026 WL 686004, at *12 (S.D.N.Y. Mar. 11, 2026) (internal quotation marks and citation omitted). Petitioner does not claim here that the arbitrator neglected to consider the arguments it presented, only that the arbitrator weighed the evidence and arguments presented incorrectly. However, "[t]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." *Wallace*, 378 F.3d at 193 (internal quotation marks and citation omitted); *see also Westerbeke*, 304 F.3d at 214 ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge."); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) ("Interpretation of [a] contract term[] is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation."). Simply because the losing party in an arbitration "takes issue with the weight accorded to certain evidence" or the "rejection of arguments related to such evidence," does not mean that the arbitrator has made an error in calculation or committed misconduct. *See In re Arb. Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., Ltd.*, 528 F. Supp. 2d 340, 352 (S.D.N.Y. 2007). "Put another way, 'an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'" *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)). In this case, the arbitrator "listed the evidentiary bases for its decision, briefly but sufficiently," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013),

and Petitioner has not shown that the arbitrator's judgment lacks justification, so much as it is dissatisfied with the justification provided.

Petitioner's argument as to consequential damages fails for much the same reason. Petitioner identifies no mathematical mistake made by the arbitrator and instead contends that the arbitrator made a substantive error in privileging Respondents' methodology for calculating lost profits over its own. Dkt. No. 10 at 23–25. Disagreement with the arbitrator's methodology for calculating lost profits is not a basis for modification under Section 11. *See Chicago Bridge & Iron Co. N.V. v. Refineria de Cartagena S.A.S.*, 2025 WL 71658, at *24 (S.D.N.Y. Jan. 10, 2025) ("'[T]he manner of computing damages is for the arbitrator and not for the courts.' An arbitral award cannot be vacated on such decisions because the [arbitrator's] methodology for calculating Respondent's damages is 'fact-based and does not permit the Court to vacate the arbitrator's award.'") (first quoting *Forall USA, Inc. v. Sarah LLC*, 2021 WL 3604758, at *2 (S.D.N.Y. Aug. 12, 2021); then quoting *Squarepoint Ops LLC v. Sesum*, 2020 WL 996760, at *5 (S.D.N.Y. Mar. 2, 2020))).

Petitioner's motion to modify the award is therefore denied.

**CONCLUSION**

Petitioner's motion to confirm the arbitral award as to liability is DENIED for lack of standing. Petitioner's motion to modify or vacate the award is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 10 and to close this case.

SO ORDERED.

Dated: July 21, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge